**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pedro A. Simpson, | No. CV-20-00495-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Louis DeJoy, Postmaster General, United States Postal Service, | |
| Defendant. | |

Pedro A. Simpson ("Simpson") has sued his former employer, the United States Postal Service (the "Agency"). On June 14, 2021, the Court issued an order granting the Agency's motion to dismiss several of Simpson's claims and, given the somewhat unusual circumstances of the case and lack of clarity in the complaint, authorized the Agency to file a successive motion to dismiss the remaining claims. (Doc. 44.) Now pending before the Court is the Agency's motion to dismiss two of Simpson's remaining claims—his claims in Counts Four and Five for Title VII retaliation. (Doc. 45.) Simpson failed to respond to the motion. For the reasons explained below, the motion is granted.

**BACKGROUND**

I.   Factual Background

The following facts, which are presumed true, are derived from the First Amended Complaint ("FAC"). (Doc. 35.)

In 1976, Simpson began his career with the Agency. (Doc. 35 at 2 ¶ 1.)[1] In 1992, Simpson became the Arizona District IT Manager. (*Id.*) Simpson served in this role until he submitted a petition for retirement on July 1, 2019, shortly after his sixtieth birthday. (*Id.* at 3 ¶ 4.)

In March 2016, Simpson underwent surgery for cancer. (*Id.* at 3 ¶ 1.) At the start of his illness, Simpson only shared news of his condition with his supervisor, District Manager John DiPeri ("DiPeri"). (*Id.*) By the summer of 2018, Simpson had "been through some 6-7 surgeries." (*Id.*)

In 2018, DiPeri was detailed to a different region. (*Id.* at 3-4 ¶ 1.) Gail Hendrix ("Hendrix"), a District Manager from Missouri, replaced him. (*Id.*) Hendrix "very quickly began a campaign to eliminate [Simpson] from his job," starting with "task[ing] [him] with meaningless assignments." (*Id.*)

In the summer of 2018, Hendrix "forced [Simpson] into a Reasonable Accommodation Process intended to return him to his office." (*Id.* at 4 ¶ 3.) During this process, Simpson "met with the District Reasonable Accommodation Committee" ("DRAC"), which consisted of Human Resources Manager Lerene Wiley ("Wiley") and "two employees from her team." (*Id.*) Simpson "provided detailed information about his . . . disability" and ultimately came to an agreement with DRAC, which the Agency memorialized in a letter on June 27, 2018. (*Id.*) In addition to "articulating [Simpson's] and [Wiley's] agreement," the letter "[]unexpectedly[] grant[ed] authority over the 'specific details'" to the District Manager. (*Id.*, emphasis omitted)

On July 9, 2018, Simpson returned to work and "worked an office schedule based on the spirit of his agreement" with DRAC. (*Id.* at 4-5 ¶ 3.) Upon Simpson's return to work, Richard "Marty" Chavez ("Chavez"), the new District Manager, met with Simpson and informed him that "he was monitoring [Simpson's] office time by [his] badge entry and exit records" and that any work from home would not count. (*Id.* at 5 ¶ 4, first.)[2]

---

[1] The paragraph numbers in the FAC restart with each new subheading.
[2] Page five of the FAC contains two paragraphs labeled as "4."

Chavez suggested that Simpson start reporting to work at 5:00 a.m., which he agreed to and began doing. (*Id.*) "Additionally, based upon the IT needs of the District, [Simpson] diligently continued to work from home, including afternoons, evenings, weekends, and holidays." (*Id.*)

At some point, Chavez told Simpson that if "he did not like the requirement [of being monitored], [Simpson] should appeal it to the Western Area." (*Id.* at 5 ¶ 4, second.) Simpson did so, but because more than 10 days had elapsed since Simpson entered into the agreement with DRAC, "the Western Area HR Manager denied [the] appeal." (*Id.*) Following this appeal, the Agency "made [Simpson's] work environment extremely and increasingly hostile toward" him. (*Id.* at 5-6 ¶ 5.) Despite this, Simpson chose not to file an Equal Employment Opportunity ("EEO") complaint because he was "waiting[ ] out the horrific environment in which [the Agency] placed him absent his legitimate District Manager" and because "[f]iling EEOs against an acting DM when one's DM is returning is only career suicide." (*Id.* at 6 ¶ 7.)

In June 2019, the Agency held a meeting in Avondale, Arizona. (*Id.* at 6 ¶ 6.) "At the same time, the District was preparing for a promotional upward mobility event in Albuquerque," for which the "District promoters selected a non-postal site." (*Id.*) Two days before the event, Renee Jones-Chaney ("Jones-Chaney"), the Tucson Plant Manager, "demanded support from District IT," including a list of demands, "which District IT has never provided nor are capable of providing." (*Id.*) Simpson replied to Jones-Chaney that "District IT could not deliver her demands" because, "[f]or off-site events, District IT support is limited to access to the USPS network and interfacing with the contracted site's IT group to coordinate what *they* must deliver." (*Id.* at 7 ¶ 2.) Jones-Chaney in turn complained to Chavez, who "instructed [Simpson] to provide everything on [Jones-Chaney's] list." (*Id.*)

On June 5, 2019, Simpson sent an email to Chavez and informed him that, to comply with Jones-Chaney's demands, "the District would be required to spend funds, Chavez would have to approve the funds, and neither [Simpson] nor District IT would violate

Federal purchasing laws (and Western Area Purchasing Guidelines)." (*Id.* at 7 ¶ 3; 10 ¶ 1.)

In response to this email, Simpson received a letter on June 6, 2019, placing him "off duty on an emergency basis" without pay, and he was escorted off the premises. (*Id.* at 8 ¶ 2, 10-12 ¶ 1.) That same day, Simpson sent an email to Chavez stating that he was "deprived of [his] right to a clear statement and an explicit statement of [his] rights" because he could not access the two Employee and Labor Relations Manual ("ELM") provisions cited as reasons for his placement on emergency off-duty status. (*Id.* at 10-12 ¶ 1.) Simpson stated that the email would "serve as [his] Notice of Appeal pursuant to all of [his] legal rights without any waiver" and requested that Chavez "provide [him] with information about how to contact an EEO Specialist." (*Id.*, emphasis omitted.) Simpson stated that Chavez's actions were "clearly retaliatory" for working under a reasonable accommodation agreement. (*Id.*) Simpson also demanded his right to sick leave under the Family Medical Leave Act ("FMLA") and stated that he would begin taking FMLA sick leave the next day. (*Id.*) The Agency "has never placed a manager who reports directly to the District Manager in an emergency off duty status without pay in the history of the Arizona District" as organized in 1992. (*Id.* at 8 ¶ 4.)

Chavez "and the entire team of senior managers . . . ignored [Simpson's] request demanding . . . appeal rights and . . . request for information about how to file [an EEO] Complaint." (*Id.* at 8 ¶ 3.) Nevertheless, on June 13, 2019, Simpson "filed his EEO Complaint via the USPS online EEO system." (*Id.*) Ultimately, at some point, Post Office Operations Manager Tina Sweeney ("Sweeney") "rescinded the letter placing [Simpson] in an off duty status without pay." (*Id.* at 12 ¶ 2.)

Simpson complains that the Agency "never granted [him] his Due Process rights before constructively terminating [his] employment"; "never invited [him] to a Fact Finding"; "never returned [his] USPS identification/security entry badge, his agency smartphone, or his key to his office"; "never advised [him] about how to reach an EEO counselor or about how to file an Agency EEO complaint"; and "forced [him] to submit a petition for retirement." (*Id.*) Simpson also alleges that he "continues to suffer greatly

from the negligent and intentional infliction of emotional [d]istress" caused by the Agency and states that he "has suffered from great emotional distress including . . . anxiety, related body rashes, increased sleep disorder, and a requirement to seek psychiatric consultation and counseling." (*Id.* at 10 ¶ 6.)

II.   Procedural History

On March 3, 2020, Simpson filed the complaint. (Doc. 1.)

On June 1, 2020, the Agency filed an answer. (Doc. 23.)

On August 19, 2020, the Court held the scheduling conference. (Doc. 30.) During it, the Agency raised concerns about the clarity of the complaint. (*Id.*) In light of those concerns, Simpson requested, and the Court granted, leave to file the FAC. (*Id.*)

On September 21, 2020, Simpson filed the FAC. (Doc. 35.)

On October 5, 2020, the Agency filed a motion to dismiss, which later became fully briefed. (Docs. 37, 39-40.)

On June 14, 2020, the Court granted in part and denied in part the Agency's motion to dismiss. (Doc. 44.) The Court interpreted the FAC as setting forth 10 claims: (1) constructive discharge related to Simpson's emergency placement on leave without pay in June 2019; (2) violation of due process related to the emergency placement; (3) failure to accommodate a disability; (4) retaliation for engaging in the reasonable accommodation process; (5) retaliation for prior protected activity; (6) disparate treatment; (7) negligent infliction of emotional distress; (8) intentional infliction of emotional distress; (9) violation of due process rights "related to the events that occurred on the day of his emergency placement"; and (10) hostile work environment. (*Id.* at 22.) The Court dismissed "all of those claims except No. 1 (constructive discharge), Nos. 4 and 5 (the retaliation claims, but only to the extent they [were] premised on the 'participation clause' [of Title VII]), No. 6 (disparate treatment), and No. 10 (hostile work environment)." (*Id.*) The Court also concluded that, "under the somewhat unusual circumstances of this case, the Agency should be afforded leave to file another dismissal motion" because the "Agency did its very best to make sense of an often inscrutable complaint and it appear[ed] . . . that some of the

claims that survived this round of briefing did so only because the Agency was unaware . . . that they stood apart from the other claims the Agency was challenging." (*Id.* at 22-23.)

On July 6, 2021, the Agency filed a motion to dismiss Counts Four and Five, which are Simpson's retaliation claims premised on the "participation clause" of Title VII. (Doc. 45.) Simpson did not respond to the motion, and the Agency did not request oral argument.

**DISCUSSION**

I.  Legal Standards

Local Rule 7.2(i) of the District of Arizona's Local Rules of Civil Procedure provides that "if [an] unrepresented party or counsel does not serve and file the required answering memoranda" in response to a motion, this "may be deemed a consent to the . . . granting of the motion and the Court may dispose of the motion summarily." The Ninth Circuit has specifically recognized that unopposed motions to dismiss may be granted on the basis of such local rules. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("A motion for summary judgment . . . cannot be granted simply as a sanction for a local rule violation . . . . [b]ut this proposition does not help Ghazali . . . [because it] address[es] only summary judgment motions, not motions to dismiss.").

Alternatively, on the merits, "to survive a motion to dismiss under Rule 12(b)(6), a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-680. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679. The court also may dismiss due to "a lack of a cognizable theory."

1  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

2  II.     Analysis

3       As an initial matter, the Court chooses, in its discretion, to grant the Agency's motion pursuant to Local Rule 7.2(i).  Although Simpson is proceeding *pro se* in this matter, he is a licensed attorney.  (Doc. 44 at 9.)  Accordingly, his failure to respond to the Agency's most recent motion is properly construed as a concession that the motion should be granted.

       The Agency is also entitled to dismissal on the merits.  "To make out a prima facie case of retaliation, [a plaintiff] must establish that he undertook a protected activity under Title VII, his employer subjected him to an adverse employment action, and there is a causal link between those two events."  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003).  Title VII's anti-retaliation provision contains two separate clauses: the "opposition clause" and the "participation clause."  *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988).  *See also Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274 (2009) ("The Title VII antiretaliation provision has two clauses, making it 'an unlawful employment practice for an employer to discriminate against any of his employees . . . [1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'  The one is known as the 'opposition clause,' the other as the 'participation clause'. . . .") (alterations in original) (citation omitted) (quoting 42 U.S.C. § 2000e-3(a)).

       "The participation clause is broadly construed to protect employees who utilize the tools provided by Congress to protect their rights."  *Learned*, 860 F.2d at 932.  *See also Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997) (describing the participation clause as prohibiting retaliation "for the employee's participation in the machinery set up by Title VII to enforce its provisions") (internal quotation marks omitted).  "[T]he statutory language [of 42 U.S.C. § 2000e-3(a)] specifically limits the participation clause . . . to proceedings under [that] subchapter."  *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir.

1990) (internal quotation marks omitted). "The mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination . . . does not automatically trigger . . . protection . . . ; the underlying discrimination must be reasonably perceived as discrimination prohibited by Title VII." *Learned*, 860 F.2d at 932.

### A. **Engaging In Reasonable Accommodation Process**

The FAC alleges that the Agency "retaliated against [Simpson] because he had engaged in protected DRAC activity." (Doc. 35 at 7, emphasis omitted.) As noted, in the reasonable accommodation process, Simpson "provided detailed information about his[] ostensibly temporary but potentially deadly disability." (*Id.* at 4 ¶ 3.) The Agency argues that Simpson "merely makes a conclusory allegation in a subheading, without providing any factual support to establish a causal link between his purported protected activity and his emergency placement" given that 11 months elapsed between the two events. (Doc. 45 at 4-5.)

The Court agrees that Simpson has not alleged a causal link between the purported protected activity and his emergency placement. "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity. But timing alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (citations and internal quotation marks omitted). The Ninth Circuit has held that an 18-month lapse is insufficient to demonstrate causation and has suggested that intervals shorter than a year may be too long. *Villiarimo*, 281 F.3d at 1065 (citing cases establishing that intervals of four months, five months, eight months, and one year were "too long to raise an inference of discrimination"). An 11-month lapse between when Simpson engaged in

the alleged protected activity and when the Agency put him on emergency placement is not, standing alone, sufficient to establish a causal connection between the two events. *See, e.g.*, *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1010 (7th Cir. 2000) ("Here, the protected expression . . . occurred nearly a full year before her termination. That interval, standing alone, is too long for the timing of Ms. Paluck's firing to raise an inference of discrimination."); *Brooks v. Agate Res., Inc.*, 2019 WL 2635594, *12 (D. Or. 2019) ("[T]he one-year time-lag between Plaintiff's alleged complaint and his termination does not, on its own plausibly allege that his termination was retaliatory."); *Culver v. Qwest Commc'ns Corp.*, 2007 WL 963446, *17 (D. Or. 2007) (concluding that a "ten-month period of time, by itself, does not create an issue of fact regarding causation"), *aff'd*, 306 F. App'x 403 (9th Cir. 2009).

This retaliation claim is thus dismissed. The dismissal is without leave to amend. Simpson's failure to respond to the motion is evidence that granting leave to amend would be futile (which, in turn, justifies the denial of leave to amend). *See, e.g.*, *Galaviz v. FBI*, 2020 WL 208044, *4 (W.D. Wash. 2020) ("Federal courts consider the failure to respond to a motion to dismiss a claim to constitute a waiver of the claim at issue. Because Mr. Galaviz has abandoned his claims by failing to respond to the FBI's motion to dismiss, the court DENIES leave to amend . . . .") (citations omitted). Additionally, Simpson was previously granted leave to amend in this case, after a lengthy discussion during the Rule 16 conference. *In re Read-Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (internal quotation marks omitted), *abrogated on other grounds as recognized in Golub v. Gigamon Inc.*, 847 F. App'x 368, 372 (9th Cir. 2021). Finally, futility is further established here because Title VII's antiretaliation provision only protects against discrimination for participating in a process involving claims of discrimination prohibited under Title VII—that is, discrimination "based upon race, color, religion, sex, or national origin." *Learned*, 860 F.2d at 932. The FAC alleges that Simpson was discriminated against for engaging in the reasonable accommodation

process for his disability, which is not prohibited under Title VII and is thus not protected by the antiretaliation provision. *Cf. id.* (affirming grant of summary judgment as to retaliation claims based on both the opposition and participation clauses because "[a]ny retaliation in this case related to . . . Learned's opposition to what he believed was discrimination based upon physical and mental limitations only," so "Learned did not allege discrimination prohibited by Title VII").

B. **Named In EEO Complaints**

The FAC alleges that Simpson terminated the details of three "detailees" in August 2018, which in turn prompted these individuals to file EEO complaints against him. (Doc. 35 at 7 ¶ 1.) The FAC further alleges the Agency "retaliated against [Simpson] because he had . . . defended [the Agency] in EEO charges naming [him] as one discriminating management official." (Doc. 35 at 7, emphasis omitted.)

The Agency argues that being named as the discriminating official in other employees' EEO complaints is "not the type of conduct protected by the 'participation clause.'" (Doc. 45 at 3-4.) The Agency argues that Simpson "was not an employee utilizing the tools provided by Congress to protect his rights under Title VII, and therefore, his involvement as the named discriminating official is not a protected activity." (*Id.*) The Agency also argues that there is no causal connection between this activity and his emergency placement because his emergency placement occurred 12 months later. (*Id.*)

The Court agrees with the Agency that Simpson has not alleged a causal connection between the alleged protected activity and his emergency placement. The one-year lapse between when Simpson was named in the EEO complaints and when he was put on emergency placement is, for the reasons explained above, insufficient to create an inference of discrimination, and the FAC contains no other allegations linking the two events. Finally, leave to amend as to this claim is denied for the same reasons as the previous claim—Simpson didn't bother to respond to the motion to dismiss, he has already been granted leave to amend in this case, and he has not alleged (or otherwise established) that the underlying processes in which he participated (*i.e.*, the defense of the EEO complaints

brought by the three detailees) involved claims of discrimination covered by Title VII, as opposed to other species of discrimination claims.

Accordingly,

**IT IS ORDERED** that the Agency's motion to dismiss (Doc. 45) is **granted**.

**IT IS FURTHER ORDERED** that Simpson may file a second amended complaint ("SAC") within 14 days of this Order. If Simpson files a SAC, the changes shall be limited to curing the deficiencies raised in the Court's June 14, 2021 order (Doc. 44) as to which leave to amend was granted. Simpson shall, consistent with LRCiv 15.1(a), attach a redlined version of the pleading as an exhibit.

Dated this 25th day of August, 2021.

Dominic W. Lanza
United States District Judge